## THE INHABITANTS OF HUNTINGTON *against* THE INHABITANTS OF OXFORD.

WRIT of error.

This was an action of *assumpsit* against the town of *Huntington*, to recover moneys expended by the town of *Oxford*, for the support of *William Yeates*, a pauper, and

Residence during infancy will not gain a settlement. The proviso at the close of the sixth section of the act relating to the admission of inhabitants (*tit.* 91.) extends to the provisions of the fourth section.

Where an infant who was a bastard, went, in pursuance of a parol agreement between his mother and a mechanic, and by his mother's consent, into a different town from that of his settlement, to learn a trade, and there lived with such mechanic in the situation of an apprentice until he was twenty-one years of age ; it was held, that he was an apprentice within the meaning of the proviso.

June, 1810.   his family.   A special verdict was found, stating these
              facts.   *Yeates*, the pauper, was born in *Huntington*, on
HUNTING-
TON           the 2d of *November*, 1781, out of lawful wedlock, and
v.            a bastard, his mother then and still being an inhabitant
OXFORD.       of *Huntington*.   In *May*, 1798, in pursuance of a parol
agreement between his mother and *Lemuel Beardsley*, of
*Oxford*, and by consent of his mother, he went into the
town of *Oxford* to learn with *Beardsley* the art, trade and
mystery of a saddler, and lived with *Beardsley* in *Oxford*
until he was twenty-one years of age.   After that time
he was married, and continued to live in *Oxford* until
the 1st of *October*, 1807, when he first became chargea-
ble. During his residence in *Oxford*, he had no guardian,
unless his mother may be considered as such by nature,
and no master, unless his living with *Beardsley* in the
manner and under the circumstances above stated, con-
stituted *Beardsley* his master.   Upon this verdict the
county court gave judgment for the plaintiffs, and a writ
of error being brought, the superior court affirmed their
judgment.

*Ingersoll* and *Mills*, for the plaintiffs in error.   The
stat. tit. 91. s. 4. provides, that any inhabitant of any
town in this state may remove into any other town, and
shall gain a legal settlement there after having resided
there, and supported himself for the term of six years.
In this case, the pauper resided in *Oxford*, after his re-
moval from *Huntington*, the place of his birth, and of
his mother's settlement, without becoming chargeable for
his support, from *May*, 1798, to *October*, 1807, a term of
more than nine years.   But it is objected, that for about
four years and a half of this time the pauper was a *minor*,
and an *apprentice*.

1. Can a minor gain a settlement by residence ? The
words of the statute are certainly broad enough to
include minors.   The terms used are " inhabitant" and
" person ;" than which, with reference to this subject,

none more general can be found in our language. No distinction of age, or sex, or condition, is made. These terms used in any statute will include minors, unless such construction would be plainly inconsistent with the general law, or some other particular statute. In *The King* v. *Wilton*, &c. 3 *Term Rep.* 356. Lord *Kenyon* recognises the doctrine, by irresistible implication, that a minor may gain a settlement in his own right. A minor may be *sui juris* in other respects. He may contract for necessaries. He may hold a military office.

2. Is this case within the proviso annexed to the sixth section, on the ground that the pauper was " an apprentice under age ?" In the first place, it is to be observed, that we claim that the pauper gained a settlement in *Oxford* by virtue of the provisions of the 4th section. The proviso *ex vi terminorum* extends only to the fifth and sixth sections. That it was not, and could not have been, *intended* to apply to the fourth section, is evident from the fact, that the fourth section was not in existence when the proviso was passed. In the editorial notes to this statute, we are informed, that the fifth and sixth sections were passed in *October*, 1789, and that the fourth section was passed in *May*, 1792. The object of the fifth and sixth sections is to provide for the removal of persons, who have come from another state, before they have gained a settlement. The proceedings are marked with some severity. If such persons refuse to depart, on warning given for that purpose, they are liable to be fined, and if unable to pay the fine, to be " whipped on the naked body not exceeding ten stripes." Then comes the proviso, that nothing contained in these sections shall be construed to affect apprentices under age. *They* were to be protected from these rigorous proceedings. This is very natural and consistent. But it would be absurd to extend the

proviso by construction to another section, not named in the proviso itself, relating to a distinct subject.

But aside from these considerations, we contend, secondly, that this case is not within the proviso, because *Yeates*, the pauper, was not an *apprentice ;* and this on two grounds. First, his mother, by whose consent he went to live with *Beardsley*, had not the *power* to make him an apprentice. The pauper being a bastard, he had, in legal contemplation, no father. The special verdict finds, that he had no guardian, unless the mother was such by nature.

The statute relating to " *Guardians*," tit. 84. provides, that any minor of age for choosing a guardian, having neither *father, guardian,* nor *master,* shall be notified to appear and choose a guardian. The *mother* is not mentioned. The fair inference is, that the legislature did not consider her, like the father, guardian by nature. In *Burk* v. *Phips*, 1 *Root*, 487 this point was decided by the superior court. The case of the mother is there expressly distinguished from that of the father; the latter being natural guardian, the former not. It is true, that the court afterwards decided in *Fields* v. *Law*, 2 *Root*, 320. that the mother, upon the decease of the father, is the natural guardian of her *female* children, *until the age for choosing guardians ;* but that decision does not affect our case. The minor in question was not a female child, and the age for choosing guardians had elapsed before he went to *Oxford* to learn a trade. Secondly, admitting that the mother had the power, still she did not exercise it in such a manner as to constitute her son an *apprentice.* There were no indentures; no binding out; nothing but a parol agreement between the mother and *Beardsley.* Wherever the statute speaks of the manner of constituting an apprentice it is by *binding out.* See tit. 33. s. 6. and tit. 130. s. 5. Does this mean a *parol* agreement ? Could a master recover for an apprentice's not staying out his time, where the binding was only

by *parol?* In *England,* a *binding out* is clearly necessary to constitute an apprentice. 1 *Bla. Com.* 426. 4 *Bac. Abr.* 557, 558. *Gwill.* edit. *Burr. Set. Ca.* No. 103, 104. 127. There is nothing peculiar in our laws to dispense with it here.

*Staples,* for the defendants in error.

1. A minor cannot gain a settlement by residence. When the law speaks of *persons,* it does not include *infants;* it speaks only of such as the law recognises *civiliter* as persons. In criminal cases, it is true, a different rule prevails. An infant, *on the ground of contract* can never be made liable; not even for necessaries. In that case he is made liable only on the ground that a bill in equity would lie against him. He must pay only as much as the necessaries are worth, whatever *contract* he may have made. It is provided by statute, (tit. 155. c. 1. s. 1.) that there shall be appointed, by the county courts respectively, from time to time, &c. " one or more *persons* in each county to be county surveyors." But can the county court appoint a *minor* to be surveyor? Another statute (tit. 146. c. 1. s. 16.) authorizes the sheriff to " depute any meet *person* to serve any particular writ." But it is an adjudicated point, that a minor cannot be deputed to serve a writ. The word " *inhabitants*" is to receive the same restricted construction whenever the subject matter requires it. The selectmen are authorized, in certain cases, " to assess the several *inhabitants* of their town." (Tit. 143. s. 1.) But it was never thought that they could assess persons of every age and condition who were in fact inhabitants of their town. Can towns appoint minors to be listers, inspectors, &c. ? This will not be claimed; and yet the words of the statutes providing respectively for their appointment are general.

Further, if a minor can gain a settlement by complying with the provisions of one part of the statute, he may by complying with those of another

part. Suppose a minor should claim a settlement by virtue of, the first section, on the ground that he had been appointed to, and had executed, some public office; would such a claim be allowed?

In *East Hartford* v. *Middletown*, in error, 1 *Root*, 196. it was held, that the pauper, who was an idiot, had gained a settlement, not in her own right, but in her mother's. As to the point in discussion, idiots and infants are upon the same footing: neither are persons *sui juris*.

In *Salisbury* v. *Fairfield*, 1 *Root*, 131. it was held, that a ward residing with his guardian did not gain a settle▪ ment by such residence.

In *England* a minor cannot gain a settlement in his own right, except by some statute provision. 3 *Term Rep.* 355. 3 *Burn's Just.* 313. [REEVE, J. In what case can an adult gain a settlement in *England* at common law?] I suppose he cannot in any case. The common law confines settlement to the place where one is born.

2. The case of this pauper comes within the proviso of the statute. Though the proviso *primâ facie* extends only to the fifth and sixth sections, yet those sections are referred to by, and connected with, the fourth section, so that if the former are affected by the proviso, the latter must necessarily be so. It is of no importance when these several sections were originally passed: the whole act came under the consideration of the legislature, and received its sanction as it now stands, at the revision in 1795.

The pauper in this case was unquestionably an apprentice in point of fact. This is sufficient for our purpose. In *England*, it is true, an apprenticeship cannot be constituted by parol. There must be a writing—a deed— an indenture. A deed-poll is not sufficient. 1 *Botts' Poor Laws*, 526. 528. 530. But all this results from the positive provisions of statute. No such provisions are to be found in our statute book. *Merrick* v. *Dickinson*, be-

fore the superior court in *New Haven* county, was an action on the case for enticing away the plaintiff's apprentice. The defendant offered to show, that the boy claimed by the plaintiff to be an apprentice was not *bound by indenture*. But the court rejected the evidence, and sustained the action on the proof of apprenticeship *in fact*. If the selectmen of a town find a minor serving as an apprentice in fact, they are to consider him as such. They have nothing to do with the *kind of evidence* by which the contract between the master and apprentice shall be shown.

The power of the mother over her child in this case has been called in question. But it has not been shown, that the mother of a bastard child may not put him out as an apprentice.

The law has gone far enough in denying to a bastard child a father. It never has said, that such a child has no mother. She is emphatically *in loco parentis :* she is both father and mother. She is entitled to the custody of the child, its nurture, and education. She may maintain an action for its seduction.

It has been decided in *England*, that a marriage in fact will give a settlement. Suppose in this state, there should be a marriage by a grand juror ; would it not be sufficient for the purpose of settlement.

EDMOND, J. This is a question of settlement. From the facts stated in the special verdict it appears, that *Yeates* was born in *Huntington*, and that his mother, at the time of his birth, was an inhabitant of *Huntington*, and so remains. Whether, therefore, the settlement of a bastard follows that of the mother, or is attached to the place where it happens to be born, *Yeates* must be considered as an inhabitant of *Huntington ;* and that town must be liable for his maintenance, unless discharged from that liability by the pauper's gaining a settlement for himself in the town of *Oxford*, or elsewhere.

June, 1810.

HUNTING-
TON
v.
OXFORD.

Did *Yeates* then, gain a legal settlement in *Oxford?* I think not; for although he in fact resided in *Oxford* more than six years successively before he became chargeable, yet a part of that time he was a minor under the age of twenty-one years, *viz.* until the 2d of *November,* 1802; and he became chargeable in less than six years from that time. I know it is contended, that the words in the act relating to the admission of inhabitants (tit. 91.) are general, " any inhabitant;" that they extend to minors and apprentices as well as adults, and that six years' residence after the age of twenty-one is not necessary. The words " any inhabitant," as used in this statute, when taken in connection with the subject matter, and the acts contemplated to be done, cannot with propriety be considered in an unlimited sense; they must be restricted to persons *sui juris;* to persons *capable* of doing the acts contemplated to be done; and who, by their own authority, at their own election, may do those acts. To extend the construction so as to embrace idiots, who have no will of their own, would be absurd. To extend them to *femes covert*, minors, apprentices, or others standing lawfully in a subordinate situation, and owing duties inconsistent with the idea of self direction and self government, would strike at the most important relations in society.

We may inquire, then, what was the actual situation of this pauper, during his residence with *Beardsley*, and before he attained the age of twenty-one? Pursuant to a parol agreement between his mother and *Beardsley*, and with her consent, he went to *Beardsley*, and lived with him, to learn a trade. Without considering whether the mother, as natural guardian, could bind; or whether the contract could be inferred between the parties; it is evident, that the intent with which he removed to *Oxford*, and the object in view in continuing there, was to serve as an apprentice, and learn a trade; and that he did voluntarily, and with his mother's consent, place himself

2

June, 1801.

HUNTING-
TON
v.
OXFORD.

and remain in the character of an apprentice until he was twenty-one. He became, then, apprentice to *Beardsley in fact*. *Beardsley* was his master *in fact*. The relative duties of master and apprentice attached, and remained with his assent until he was of age. During that period, he could not with propriety be said to perform the acts of self removal or self support. During that period, the power of the selectmen of *Oxford* to remove him was suspended. Independent, therefore, of the proviso in the sixth section, it appears to me, that the pauper did not gain a legal settlement in *Oxford*.

The proviso at the close of the sixth section is in these words: " That nothing in this paragraph, or the paragraph next preceding, shall be construed to affect apprentices under age, or servants bought for a time." This proviso is not limited in its operation to the fifth and sixth sections, but extends equally to the fourth. The fourth section refers, for the manner of removal of the persons therein contemplated, to the provisions in the fifth. The proviso at the close of the sixth refers back to the subject matter of the preceding sections. The fourth and fifth sections, therefore, are so engrafted upon, and incorporated with, each other, that neither is complete, or intelligible, without the other, and may be considered as constituting but one section, without doing violence to the letter of the proviso.

But it is said, that *Yeates* was not an apprentice; that to constitute an apprenticeship there must be *a binding by indenture*. So have been the decisions in *England*. But the decisions there have been founded on a great variety of statute provisions respecting apprentices. The apprentice is to be bound by indenture; the full sum given, or agreed to be given, with an apprentice, is to be written at length; it must bear date on the day it is executed; it must be stamped; duties must be paid, &c. This statutory system of jurisprudence, with the decisions of their courts, may be wise, and well

June, 1810.

WATER-
BURY
v.
CLARK.

adapted to their circumstances, without being obligatory on us. Our statutes have none of these provisions; no such regulations have been adopted here. The words in the proviso in our statute are not *bound apprentices,* but " *apprentices under age ;*" and, independent of *English* statutes, and the construction of their courts on those statutes, (and we have not adopted their words,) may as well intend those who are placed under the government and direction of another to learn a trade, or the art of husbandry, without a written indenture, as those who are bound by deed; those who are apprentices *in fact*, as well as those who have been bound by deed or indenture in a particular form.

For these reasons I am of opinion, that in the judgment complained of there is nothing erroneous.

The other judges were of the same opinion.

Judgment affirmed.